UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDERICA M. TEER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:11-cv-01339-MJD-TWP |
| MICHAEL J. ASTRUE COMMISSIONER OF ) | |
| THE SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

# Order

Plaintiff Frederica M. Teer ("Teer") requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons set forth, the Court **REMANDS** the matter for further proceedings consistent with this Order.

## I. Background

**A. Procedural History**

On November 9, 2009, Teer filed for DIB, alleging a disability beginning on October 29, 2009. The Social Security Administration ("SSA") denied Teer's application initially and upon reconsideration. Thereafter, Teer requested a hearing, which Administrative Law Judge Julia D. Gibbs ("ALJ") held on May 5, 2011. On May 16, 2011, the ALJ denied Teer's application. Teer then requested review of the ALJ's decision by the Appeals Council. On August 9, 2011, the Appeals Council affirmed the ALJ's decision, making the ALJ's decision the final decision of

the SSA. On October 4, 2011, Teer timely filed this appeal, requesting review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B. Factual Background**

On the alleged onset date, Teer was forty-two years old. Teer has a college degree and has past relevant work as a manager in quality control and as a processor. Teer was last employed in October 2009, but her position was phased out. Before her position was eliminated, Teer claimed that she about to be fired due to her difficulty focusing. According to Teer, she would fall asleep while at work, including falling asleep during a meeting.

Teer alleges she is disabled because of pain due to fibromyalgia, depression, and anxiety. The relevant medical evidence shows that, beginning in 2009, Teer saw several doctors complaining about widespread musculoskeletal pain, exhaustion, and depression. In September 2009, Teer saw rheumatologist Christopher Wu, M.D., who diagnosed her with fibromyalgia, lumbar spondylosis, mild anemia, a history of migraine headaches, obesity, depression, and anxiety.

On January 15, 2010, consulting physician Thomas Alley, M.D. examined Teer and found that she was capable of light activity on a full time basis. Shortly thereafter, reviewing physician Frank Lavallo, M.D. reviewed Teer's file and found no severe, disabling physical impairments. Dr. Fernando Montoya later affirmed Dr. Lavallo's decision.

On February 3, 2010, consulting psychologist Suzanne Leiphart examined Teer. Dr. Leiphart observed that Teer was anxious with an affect appropriate to mood, had racing thoughts at times, and lost words at times. Dr. Leiphart diagnosed Teer with depressive and anxiety disorder and assigned her a global assessment of functioning ("GAF") score of fifty-three, indicating moderate symptoms or moderate difficulty in social or occupational functioning.

On February 26, 2010, reviewing psychologist Amy S. Johnson, Ph.D. found Teer moderately limited in her activities of daily living and in maintaining concentration, persistence, or pace. Dr. Johnson found Teer mildly limited in maintaining social functioning. On May 18, 2010, Dr. Joseph Pressner, Ph.D. affirmed Dr. Johnson's opinion.

On March 24, 2010, Teer also saw Dr. Louise Brimo-Longe, M.D., for a psychiatric evaluation. Teer reported that she had recurrent passive suicidal ideation and had attempted suicide about six months ago by overdosing on vicodin, klonopin, and motrin, but did not go to the hospital. Teer stated that she could not read a novel due to her impaired concentration. Teer also reported having anxiety attacks about twice a month lasting for approximately two hours. Dr. Brimo-Longe found that Teer had good memory and fair attention, assigning Teer a GAF score of fifty-five. In subsequent visits with Dr. Brimo-Longe, Teer's GAF score remained unchanged, although Teer's mood and other symptoms improved.

Teer also sought treatment at St. Vincent's Hospital for her fibromyalgia. In June 2010, doctors at St. Vincent reported that Teer ran out of her narcotic pain medication two weeks earlier because she was not taking the pain medications as directed. Teer claimed that her treating physician Dr. Hodges had been refilling her narcotic pain medications, but the doctors at St. Vincent found no records of any refills since November 2009. As a result, they refused to prescribe Teer narcotic pain medication.

In August 2010, another doctor at St. Vincent noted that Teer claimed her rheumatologist had increased her pain medication and prescribed her a muscle relaxant, but Teer's medical records did not corroborate Teer's claims. Teer also requested klonopin to treat her restless leg syndrome, but Teer's medical records did not show that she had ever been diagnosed with restless leg syndrome. Teer was again denied narcotic pain medication because she had

breached her narcotic medication contract. In March 2011, Teer reported that she had not taken her medications for hypertension and hypertriglyceridemia for the previous six months because she was angry that the Hospital refused to prescribe her narcotic pain medication. Once again Teer requested narcotic pain medication, which the St. Vincent physician again refused to prescribe.

## II. Disability and Standard of Review

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A)

The Social Security Administration has established a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The series of steps are followed in order. If it can be determined that the claimant is or is not disabled at a particular step, the evaluation will not continue and a decision will be made. If a claimant's disability cannot be determined at a particular step, the evaluation will proceed to the next step.

Step one requires the ALJ to consider work activity and any substantial gainful activity of the claimant. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the medical severity of claimant's impairments is considered and a severe medically determinable physical or mental impairment that meets the duration requirement must be found for the evaluation to continue. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the medical severity of the claimant's impairments is

4

considered in that it must be determined that the claimant's impairment or combination of impairments meets or medically equals the criteria for one of the listings in 20 C.F.R. Pt. 404, Subpart P, App. 1. The duration requirement must also be satisfied. 20 C.F.R. § 404.1520(a)(4)(iii).

Before the fourth step, the claimant's residual functional capacity ("RFC") is determined. The RFC determination is based on all the relevant evidence in the record, including statements provided by medical sources. 20 C.F.R. § 404.1545(a)(3). The fourth step then uses this residual functional capacity determination in assessing the claimant's ability to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, then the evaluation continues to the fifth and final step where the claimant's residual functional capacity determination will be considered with regard to the claimant's age, education, and work experience to decide whether the claimant can perform any other work. 20 C.F.R. § 404.1520(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, …or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. The ALJ's Decision

At step one, the ALJ found that Teer had not engaged in gainful activity since the alleged onset date. [R. 11.] At step two, the ALJ found that Teer had the following severe impairments: fibromyalgia, migraine headaches, obesity, depression, anxiety, and bipolar disorder. [*Id.*] At step three, the ALJ found that Teer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.*]

The ALJ determined that Teer had the RFC to perform unskilled light work with the following additional limitations: she cannot work with the general public, crowds, or assembly lines; and she requires the ability to alternate between sitting and standing every forty-five minutes. [*Id.* at 13.] At step four, the ALJ found that Teer could not perform any past relevant work. [*Id.* at 16.] At step five, the ALJ found that Teer could perform jobs that existed in significant numbers in the national economy, including occupations such as courier, office mail clerk, and office helper. [*Id.* at 17.] Accordingly, the ALJ concluded that Teer was not disabled.

### IV. Discussion

Teer's first argument is that substantial evidence fails to support the ALJ's denial decision. Specifically, Teer argues that (1) she met her burden of proof by presenting evidence

that her combined impairments rendered her totally disabled; (2) the ALJ failed to summon a medical advisor to testify whether Teer's combined impairments medically equaled a listed impairment; and (3) the ALJ ignored or arbitrarily rejected treatment evidence that proved Teer's combined impairments rendered her disabled. Next, Teer argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. Lastly, Teer argues that the ALJ's step five determination is not supported by substantial evidence. The Court will address each argument in turn.

**A. Substantial Evidence Supports the ALJ's Decision**

Teer first contends that she has met her burden of proof by offering evidence that her combined impairments rendered her totally disabled. In her brief, however, Teer offers nothing but boilerplate language that the ALJ's decision is "obviously unfair" and must be reversed because it fails to build an accurate and logical bridge. [Dkt. 18 at 9-10.] Teer provides no analysis whatsoever to support her contention; therefore, the Court finds it waived. *See Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citations omitted) (finding "undeveloped or unsupported contentions are waived").

Teer next contends that the ALJ failed to summon a medical advisor to testify regarding medical equivalence. This argument is without merit. The decision to use a medical expert is discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that he must do so. *See* 20 C.F.R. 416.927(f)(2)(iii). "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, **if necessary**, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (emphasis added). Here, the record contained ample evidence to support the ALJ's finding.

Moreover, under Social Security Ruling ("SSR") 96-6p, a signature of a state agency medical or psychological consultant on a Disability Determination or Transmittal Form ("DDT") "ensures that consideration by a physician (or psychologist) … has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). The signature on a DDT form "conclusively establishes" that a medical consultant has considered the question of medical equivalence under the listings and the ALJ may rely upon the opinions of medical experts completing the DDT forms. *Scheck*, 357 F.3d at 700. Here, Dr. Johnson and Dr. Pressner completed DDT forms and both found Teer not disabled. [R. 45-46.]

Lastly, Teer contends that the ALJ ignored or arbitrarily rejected treatment evidence that proved Teer's combined impairments rendered her disabled. Between her initial brief and her Reply, Teer devotes approximately ten pages listing evidence that the ALJ either ignored or selectively considered. However, an ALJ is not required to discuss every piece of evidence submitted. *Martinez v. Astrue*, No. 2:10-CV-370-PRC, 2011 WL 4834252, at *7 (N.D. Ind. 2011) (citing *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996)). The ALJ's discussion of the medical evidence accurately portrays Teer's impairments and does not ignore any highly pertinent evidence. In fact, the ALJ's RFC discussion contains a relatively detailed description of Teer's medical history, including a discussion of her fibromyalgia, treatment for depression, and the consultative exams Teer underwent. [R. 14-16.] In sum, the Court finds the ALJ's step-three decision is supported by substantial evidence.

**B. The ALJ's Credibility Determination is Contrary to SSR 96-7p**

Teer next argues that the ALJ's credibility determination is patently erroneous. Because "[a]n ALJ is in the best position to determine the credibility of witnesses, [the Court will] review that determination deferentially." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Accordingly, courts will generally not overturn an ALJ's credibility determination unless it is patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, the ALJ must support his credibility findings with substantial evidence and must explain his decision in a way that allows a court to determine whether the ALJ reached the decision in a rational manner, logically based on specific findings and the evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

According to Teer, the ALJ's credibility determination is contrary to SSR 96-7p for two reasons. First, Teer argues the credibility determination is contrary to SSR 96-7p because the ALJ "failed to mention the medications she was taking which proved she was totally disabled, such as the antipsychotic medications Abilify and Risperdal and the narcotic pain medication Oxycodone." [Dkt. 18 at 19.] To begin with, that Teer took certain medications does not prove she was totally disabled.

Moreover, the ALJ did, in fact, mention Teer's medications multiple times. For example, the ALJ noted that Dr. Hodges "adjusted previously prescribed mood medications due to expense." [R. 14.] The ALJ noted that in July 2010 a treating nurse practitioner indicated the efficacy of Teer's prescribed medication was good. [*Id.*] The ALJ also noted that St. Vincent's Hospital prescribed Teer with multiple pain medications, but later refused to prescribe requested pain medications because Teer did not take her medications as directed and broke a narcotics contract with St. Vincent. [R. 14-15.] Finally, the ALJ noted that Teer failed to take her

9

prescribed hypertension and hypertriglyceridemia because she was angry that St. Vincent refused to offer her pain medications and again requested more pain medications, which St. Vincent again refused. [R. 15.]

Teer also argues that the ALJ's credibility determination is contrary to SSR 96-7p because the ALJ improperly considered gaps in Teer's treatment record. In relevant part, SSR 96-7p states the following:

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints …. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.

SSR 96-7p. Thus, an ALJ should not draw any inferences—or make any adverse credibility determinations—based upon an individual's failure to seek or pursue regular medical treatment with considering the individual's explanations, if any.

Here, the ALJ made such inferences without considering Teer's explanation. At the hearing, Teer explained that "[a] lot of the problem with being able to see these people [treatment providers] is I don't have the money." [R. 31.] The Seventh Circuit has explained that "[a]n inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'" *Craft*, 539 F.3d at 679 (quoting SSR 96-7p). There is no indication that the ALJ ever considered this explanation before drawing inferences about Teer's medical treatment. In her decision, the ALJ stated that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." [R. 14.] The ALJ offered no further explanation as to what type of medical treatment one should expect to see for a totally disabled person. Additionally, in making her credibility determination, the ALJ noted at least two gaps in Teer's treatment records, one of which the ALJ describes as significant. [*Id.*] Teer's

inability to afford medical treatment might explain the type of medical treatment she received and the gaps in her medical treatment.  The ALJ never considered Teer's explanation and for that reason, the Court finds it necessary to remand this matter for further proceedings.

### C. The ALJ's Step Five Determination

Because the ALJ's credibility determination affects her findings regarding Teer's limitations, which directly impacts the ALJ's step-five decision, the Court cannot address whether substantial evidence supports the ALJ's step-five decision.  Upon remand, the ALJ should re-consider her step-five decision if—after reconsidering Teer's credibility—the step-five decision does not accurately reflect Teer's ability to work.

## V. Conclusion

For the above stated reasons, the Court hereby **REMANDS** the matter for further proceedings consistent with this Order.  In rendering this decision the Court neither makes nor intends to infer any decision regarding the underlying merits of Teer's claim.

Date:   09/18/2012

Distribution List:  All counsel registered with CM/ECF.

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana